United States District Court
Middle District of Florida
Jacksonville Division

**VICTORIA RUTH AMBURGEY,**

 *Plaintiff,*

v.                                                                                              NO. 3:20-cv-627-PDB

**ACTING COMMISSIONER OF SOCIAL
SECURITY,**

 *Defendant.*

---

# Order

 Victoria Amburgey brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to review a final decision of the Acting Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Doc. 1 at 2. Under review is a decision by an Administrative Law Judge (ALJ) signed on August 6, 2019. Tr. 16–30. Summaries of the law, procedural history, and administrative record are in the ALJ's decision, Tr. 16–30, and the parties' briefs, Docs. 23, 24, 27, and not fully repeated here.

### I. Background

 Amburgey stopped working in 2014. Tr. 250. Her date last insured is December 31, 2019. Tr. 247. She first applied for benefits on February 3, 2015, alleging a disability onset date of November 15, 2014. Tr. 67. On October 19, 2017, an ALJ found she was not disabled. Tr. 67–77. She next applied for benefits on February 16, 2018, alleging a disability onset date of October 17,

2017. Tr. 226–27. She later amended this date to May 18, 2018. Tr. 39. She alleged she has several impairments affecting her ability to work: diabetes, depression, anxiety, injured fingers, gout, fibromyalgia, nerve damage in her feet and hands, high blood pressure, and restless leg syndrome. Tr. 240. On August 6, 2019, the ALJ found she is not disabled. Tr. 16–30. She proceeded through the administrative process, failing at each level. Tr. 1–6, 16–30, 119–48. This appeal followed. Doc. 1.

## II.     ALJ's Decision

In the decision under review, the ALJ proceeded through the five-step sequential process in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

At step one, the ALJ found Amburgey has not engaged in substantial gainful activity since the alleged disability onset date (May 18, 2018). Tr. 17.

At step two, the ALJ found Amburgey has a severe impairment of "disorders of the right shoulder." Tr. 18. The ALJ found other impairments not severe because they "did not impose vocationally restrictive limitations for a period of 12 continuous months." Tr. 18–21.

At step three, the ALJ found Amburgey has no impairment or combination of impairments that meets or medically equals the severity of any impairment in the regulatory listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21.

The ALJ found Amburgey has the following residual functional capacity (RFC):

> [She can perform] medium work as defined in the regulations except with no more than frequent right upper extremity pushing, pulling and

reaching but with no more than occasional right upper extremity overhead reaching; no more than frequent climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no more than occasional climbing of ladders, ropes and scaffolds; no concentrated exposure to dangerous machinery and unprotected heights; and no more than simple routine, repetitive tasks.

Tr. 21 (emphasis omitted).

At step four, the ALJ found Amburgey cannot perform her past relevant work as a driver, cleaner, or fast-food manager. Tr. 27–28.

At step five, the ALJ relied on the testimony of a vocational expert (VE) and found Amburgey can perform jobs as a "linen-room attendant," "day worker," and "laundry worker I." Tr. 28–29 (capitalization omitted). In response to a colloquy at the hearing,* the ALJ added:

---

*At the hearing, the VE testified about jobs a hypothetical person could perform but opined the person could do none of those jobs if she could stand and walk for no more than six hours. Tr. 57–58. The following colloquy occurred:

> ALJ: Okay, all right. So, Ms. Hanley, you said that if the person was limited to six hours total of standing and walking, the jobs would be eliminated. Is that right?
>
> VE: The jobs, the medium jobs that I've provided?
>
> ALJ: Yes. Yes.
>
> VE: Yes, Your Honor.
>
> ALJ: Okay. Because I thought that that's what our regulations said, for a definition of medium work. That's not correct?
>
> VE: A total of six hours—
>
> ATTY: I don't think medium work talks about the amount of time to stand and walk.
>
> ALJ: Let's see here. Let's see.
>
> VE: And, Your Honor, I may have misinterpreted. When I gave you total, I think that means together.
>
> ALJ: Okay.
>
> VE: Not each.

> The claimant's attorney asked the vocational expert whether the above jobs could still be performed if the individual were restricted to no more than six hours of standing and walking. The vocational expert testified that they could not be performed. Although the State agency medical consultant completed a worksheet indicating the claimant has been capable of standing and walking for about six hours, there is no indication of a conclusion that she was precluded from standing and walking for more than six hours. Indeed, the claimant's only severe impairment related to her shoulder, and this condition could not reasonably be expected to result in any standing or walking limitations.

Tr. 29.

### III. Standard of Review

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.*

If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

---

> ALJ: But on—the person on their feet for six hours, because I think—so medium work involves lifting some weight—give a definition for how much standing or walking. All right. …

Tr. 58–59.

4

IV.     Analysis

A.     *The ALJ reasonably relied on the VE's testimony.*

Amburgey first argues, "The ALJ did not reasonably rely on the [VE's] testimony to deny benefits." Doc. 23 at 4. She contends the ALJ erred in finding she could perform the jobs the VE identified because the ALJ also found she was limited to medium work as defined by the regulations. Doc. 23 at 4–6; Doc. 27 at 1–3.

Regulations define "medium work" as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

A Social Security Ruling (SSR) is a ruling published under the authority of the Commissioner and is binding on all components of the Social Security Administration (SSA). 20 C.F.R. § 402.35(b)(1). "These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA has] adopted." *Id.*

About "medium work," SSR 83-10 provides, "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time." SSR 83-10.

Amburgey shows no reversible error. In the decision, the ALJ explained Amburgey could perform medium work "as defined in the regulations," Tr. 21, which themselves include no standing or walking limitation, *see* 20 C.F.R. §§ 404.1567(c), 416.967(c), as her lawyer acknowledged at the hearing, *see* Tr.

5

58 ("I don't think medium talks about the amount of time to stand and walk."). Considering the agency interpretation in SSR 83-10 and the VE's related testimony, the ALJ further explained that Amburgey has no walking or standing limitation. Tr. 29. Contrary to Amburgey's argument, the ALJ reasonably relied on the VE's testimony that the hypothetical person could perform the identified jobs unless the person was limited to six hours total of walking and standing. *See* Tr. 29, 57–58.

The ALJ's finding that Amburgey has no walking or standing limitation is supported by substantial evidence, and Amburgey does not argue otherwise. *See generally* Doc. 23 at 4–6; Doc. 27 at 1–3. The evidence includes physical examinations with normal results, Tr. 546–48, 574, 582, 585, 588, 591, a finding that Amburgey has full range of motion except in her right shoulder, Tr. 548–50, and Amburgey's own testimony that her anxiety and hand injury are the only medical conditions interfering with her ability to work, Tr. 45–49.

Reversal based on reliance on the VE's testimony is unwarranted.

### B. *The ALJ applied the correct legal standards, and the RFC is supported by substantial evidence.*

Amburgey argues, "The RFC is contrary to law and not supported by substantial evidence because it fails to account for all the work-related limitations associated with [her] impairments." Doc. 23 at 6. She relies on opinions of Dr. Mrugesh Thakkar and P.A. Jessie Hiott and physical therapy with P.T. Joseph Resetich to contend that the record reflects more severe limitations than the ALJ found. Doc. 23 at 9–15.

A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The SSA uses the RFC at step four to

6

decide if the claimant can perform any past relevant work and, if not, at step five with other factors to decide if there are other jobs in significant numbers in the national economy she can perform. *Id.* §§ 404.1545(a)(5), 416.945(a)(5). The "mere existence" of an impairment does not reveal its effect on a claimant's ability to work. *Moore*, 405 F.3d at 1213 n.6.

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ will consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors," including evidence that a medical source is familiar with the other evidence in the claim or understands the disability program's policies and evidentiary requirements. *Id.* at §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The most important factors are supportability and consistency, and the ALJ must explain how she considered them. *Id.* at §§ 404.1520c(a), (b); 416.920c(a), (b).

Here, the ALJ applied the correct legal standards, and substantial evidence supports the RFC finding. As the ALJ observed, this evidence includes Amburgey's largely normal medical evaluations; a clinical evaluation from Dr. Susana Barsky describing Amburgey's behavior as normal, various skills as adequate, and prognosis as "good to fair"; an opinion of Dr. David Clay indicating mental limitations were mild; and Amburgey's generally conservative treatment. Tr. 25–27; *see also* Tr. 546–50, 553–58, 574, 582, 585, 588, 591 (supporting records). Considering this evidence, the Court must affirm, even if other evidence preponderates against the RFC finding. *See Crawford*, 363 F.3d at 1158.

7

In assigning little weight to the evidence Amburgey now cites, the ALJ explained how she considered supportability and consistency. The ALJ explained that she rejected Dr. Thakkar's and Hiott's opinions as unsupported by the record, and the ALJ demonstrated that the opinions were inconsistent with the providers' own medical findings. Tr. 25–27.

For example, the ALJ observed that Dr. Thakkar's treatment notes show Amburgey had full range of motion everywhere but her right shoulder, walked normally, had normal reflexes, and had full strength in all extremities, but he opined she cannot stand, walk, lift, or bend for prolonged periods. Tr. 25–26; *see also* Tr. 547–50 (treatment notes and opinion). The ALJ also observed that Hiott's treatment notes show Amburgey consistently had no anxiety, depression, or memory loss, but she opined Amburgey suffers "serious and persistent" anxiety, depression, and memory loss that would regularly prevent her from completing an eight-hour work shift. Tr. 27; *see also* Tr. 569–70, 574, 582, 585, 588, 591 (treatment notes and opinion). As another example, the ALJ observed that Dr. Thakkar opined Amburgey cannot work around people because of social anxiety, but Hiott's treatment notes consistently show Amburgey had no anxiety, Dr. Susana Barsky's treatment notes show Amburgey had adequate social skills, and Amburgey herself admitted she socializes with a friend two or three times a week and sees her daughter daily, Tr. 27; *see also* Tr. 49–50, 550, 556, 574, 582, 585, 588, 591 (treatment notes, opinions, and Amburgey's testimony). The ALJ also correctly observed that Amburgey's hip ailment improved with physical therapy, Tr. 25, 27, as Resetich reported, Tr. 562.

Reversal to reevaluate the RFC finding is unwarranted.

### C. *The ALJ had no obligation to expressly state consideration of Amburgey's work history in analyzing her symptoms.*

Amburgey argues, "The ALJ's credibility assessment is deficient generally because of the error described [in the first two arguments]; it is also specifically so in failing to consider [her] stellar work history." Doc. 23 at 17. Amburgey explains she uses the term "credibility" to refer to "the Agency's required analysis of consistency and supportability." Doc. 23 at 18 n.5. Without addressing that she left her last job approximately four years before her alleged onset date, she asserts her "certified earnings record demonstrates a virtually uninterrupted 35[-]year work history prior to her alleged onset date of disability." Doc. 23 at 18. Amburgey relies on 20 C.F.R. § 404.1529(c)(3), SSRs 96-8p and 16-3p, and *Lafond v. Commissioner of Social Security*, No. 6:14-cv-1001, 2015 WL 4076943 (M.D. Fla. July 2, 2015). Doc. 23 at 18–19.

To determine disability, the SSA considers symptoms, including pain, and the extent to which the symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). Statements about symptoms alone cannot establish disability. *Id.* §§ 404.1529(a), (b); 416.929(a), (b). Objective medical evidence from an acceptable medical source must show a medical impairment that "could reasonably be expected to produce the pain or other symptoms" and, when considered with the other evidence, would lead to a finding of disability. *Id.* §§ 404.1529(a), (b); 416.929(a), (b).

The finding that an impairment could reasonably be expected to produce the pain or other symptoms does not involve a finding on the intensity, persistence, or functionally limiting effects of the symptoms. *Id.* §§ 404.1529(b), 416.929(b). For that finding, the SSA considers all available evidence,

9

including medical history, medical signs, laboratory findings, and statements about how the pain or other symptoms affect the claimant. *Id.* §§ 404.1529(a), (c); 416.929(a), (c). The SSA then determines the extent to which the "alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how" the symptoms affect the ability to work. *Id.* §§ 404.1529(a), 416.929(a).

"Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the SSA "will carefully consider any other information [the claimant] may submit about … symptoms." *Id.* §§ 404.1529(c)(3), 416.929(c)(3). The SSA "will consider all of the evidence presented, including information about [a claimant's] prior work record, … statements about [the claimant's] symptoms, evidence submitted by … medical sources, and observations by [SSA] employees and other persons." *Id.* Factors relevant to pain or other symptoms include daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication to alleviate the pain or other symptoms; treatment for the pain or other symptoms other than medication; and measures used to relieve the pain or other symptoms. *Id.*

To determine the extent to which pain or other symptoms affect a claimant's capacity to perform basic work activities, the SSA considers statements about the intensity, persistence, and limiting effects of the pain or other symptoms; the statements in relation to the objective medical and other evidence; any inconsistencies in the evidence; and any conflicts between the

statements and other evidence, including history, signs, laboratory findings, and statements by others. *Id.* §§ 404.1529(c)(4), 416.929(c)(4).

Effective March 28, 2016, SSR 16-3p rescinded a previous SSR on credibility of a claimant. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (republished). The SSR removed "credibility" from policy because the regulations do not use that term. *Id.* at *2. The SSR clarified that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Instead of assessing credibility, an ALJ must consider "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *Id.*

Here, the ALJ properly evaluated Amburgey's statements about her symptoms and how they affect her ability to work. The ALJ considered the statements in relation to treatment notes, medical opinions, and statements from others. Tr. 22–27. The ALJ detailed extensive treatment notes reflecting less limitation than Amburgey alleged and noted conflicts between Amburgey's testimony and reports from her daughter and friends. Tr. 23–27. Based on the discrepancies, she found Amburgey's statements were inconsistent with the objective medical and other evidence in the record. Tr. 22.

Amburgey shows no reversible error in the ALJ's failure to expressly evaluate her assertedly strong work history. *See* Doc. 23 at 17–19. Although the SSA will consider information about a claimant's prior work record in evaluating a claimant's pain and other symptoms and how they affect her ability to work, *see* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4), SSR 16-3p, no binding authority requires an ALJ to give particular weight to a strong work record or to expressly state consideration of a strong work record. *Lafond* is not binding and is unpersuasive because the opinion uses "credibility" in the

11

traditional sense—not as Amburgey defines it—and was decided before SSR 16-3p clarified that ALJs should evaluate statements for consistency with record evidence rather than assess credibility.

Reversal for failure to expressly evaluate Amburgey's assertedly strong work history is unwarranted.

## V.   Conclusion

The Court **affirms** the Acting Commissioner's decision and **directs** the clerk to enter judgment for the Acting Commissioner and against Victoria Amburgey and close the case.

**Ordered** in Jacksonville, Florida, on March 30, 2022.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*